IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**WILLIE HAMPTON**                                                                                        **MOVANT**

**v.**                                           **No. 2:00CR94-SA-DAS**

**UNITED STATES OF AMERICA**                                         **RESPONDENT**

**MEMORANDUM OPINION**

This matter comes before the court on the motion of Willie Hampton to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has responded to the motion, and the parties have submitted additional briefing. The matter is ripe for resolution. For the reasons set forth below, the instant motion to vacate, set aside, or correct sentence will be dismissed with prejudice as untimely filed.

*Habeas Corpus* **Relief Under 28 U.S.C. § 2255**

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

> The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the 1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id*.

## Section 2255 Proceedings

Section 28 U.S.C. § 2255 permits an inmate serving a sentence after conviction of a federal crime "to move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). As with the writ of *habeas corpus*, *see* 28 U.S.C. §§ 2241, 2254, Section 2255 sets forth only four bases on which such a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Thus, a prisoner must claim either a constitutional violation or want of subject matter jurisdiction to invoke 28 U.S.C. § 2255. In the absence of constitutional or jurisdictional defects, a federal prisoner may invoke § 2255 only if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

The district court must first conduct a preliminary review of a section 2255 motion, and "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceeding that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings, Rule 4(b). If the motion raises a non-frivolous claim to relief, the court must order the Government to file a response or to take other appropriate action. *Id.* The judge may then require

the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery. *Rules Governing Section 2255 Proceedings,* Rules 6–7.

After reviewing the government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must decide whether an evidentiary hearing is warranted. *Rules Governing Section 2255 Proceedings,* Rule 8. Under the statute, an evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, the court need not hold an evidentiary hearing if the prisoner fails to produce "independent indicia of the likely merit of [his] allegations." *United States v. Edwards,* 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *See Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980). For certain "structural" errors, relief follows automatically once the error is proved. *See Burgess v. Dretke,* 350 F.3d 461, 472 (5th Cir. 2003). For other errors at the trial court level, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case. *Brecht v. Abrahmson,* 507 U.S. 619, 637 (1993); *see also United States v. Chavez,* 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht's* harmless error standard in a § 2255 proceeding). If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

**Facts and Procedural Posture**

In May of 2000, Willie Hampton was named in four counts of a nine count indictment: Count One charged conspiracy to distribute an amount in excess of 50 grams of crack cocaine, with a potential sentence of ten years to life imprisonment (21 U.S.C. §§ 841(b)(1)(A) and 846); Count Four charged distribution of an amount in excess of five grams of crack cocaine, with a potential sentence of five to 40 years (21 U.S.C. § 841(b)(1)(B)); Count Five charged possession with intent to distribute crack cocaine, with a potential sentence of not more than 20 years (21 U.S.C. § 841(b)(1)(C)); and Count Six charged possession with intent to distribute an amount in excess of 50 grams of crack cocaine and an amount in excess of 500 grams of powder cocaine, with a potential sentence of ten years to life imprisonment (21 U.S.C. § 841(b)(1)(A)).

By the date of that indictment, Hampton had been previously convicted of Possession of Marijuana for Sale (California Superior Court, San Mateo County, Dkt. # C8851) and Possession of Cocaine with Intent to Distribute (U.S. District Court, San Francisco, CA, Dkt. # CR86-0444LHB). Presentence Investigation Report (PSR), ¶¶ 48, 54. As a result, Hampton was categorized as a career offender. PSR, ¶ 35. In Count Six, Hampton was indicted for possession with intent to distribute in excess of 50 grams of crack cocaine in violation of § 841(b)(1)(A), which provides that:

> [i]f any person commits a violation of this subparagraph ... after two or more prior convictions for a felony drug offenses have become final, such person shall be sentenced to a mandatory term of life imprisonment without release and fined in accordance with the preceding sentence.

Prior to trial, the government filed notice of its intent to seek an enhanced statutory sentence as a result of Hampton's prior convictions under 21 U.S.C. § 851. (Doc. #46).

Hampton proceeded to trial, and on January 30, 2001, the Jury acquitted him on Count One, but convicted him on Counts Four, Five and Six. (Doc. #186).  The Pre-Sentence Investigation Report contained facts showing that Hampton was responsible for 2.659 kilograms of crack cocaine and 5.724 kilograms of powder cocaine.  PSR, ¶ 19.  On July 11, 2001, the district court adopted the findings of the Pre-Sentence Report and sentenced Hampton to a mandatory term of life imprisonment. (Doc. #208).

Hampton was subject to a life sentence under both statutory and Sentencing Guideline provisions.

**Under the Statute:**

Willie Hampton was convicted on Count Four.  As Hampton's sentence had been previously enhanced for a prior drug conviction, according to 21 U.S.C. § 851, his sentencing range for Count Four was not less than 10 years not more than life imprisonment.  PSR, ¶ 92 (a violation of 21 U.S.C. § 841(b)(1)(B)).  Hampton was also convicted on Count Six.  His sentence was enhanced under 21 U.S.C. § 851, and Hampton was subject to a statutory mandatory life sentence.  PSR, ¶ 92 (a violation of 21 U.S.C. § 841(b)(1)(A)).

**Under the Sentencing Guidelines:**

Hampton was held accountable for 2.659 kilograms of crack cocaine and 5.724 kilograms of powder cocaine, which resulted in a base offense level of 38.  PSR, ¶¶ 19, 26. Hampton's sentence was enhanced because he was a leader organizer (4 levels) and for obstruction of justice (2 levels), which resulted in a total offense level of 44.  PSR, ¶¶ 29, 30, 31, respectively. Hampton thus had a total offense level of 44 and a criminal history category VI, which resulted in a sentencing guideline range of mandatory life imprisonment.  PSR, ¶¶ 32, 64.

Hampton filed a direct appeal. His conviction was affirmed on November 12, 2004. His Petition for Writ of Certiorari was denied on February 8, 2005. Hampton filed a Motion to Set Aside Judgment on June 20, 2005. That Motion was denied September 30, 2005. Hampton filed his first Motion to Vacate under 28 U.S.C. § 2255 on March 3, 2006, which was denied on December 19, 2007. Hampton filed a Motion for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense on February 28, 2008, which was denied on May 12, 2008, as moot, because Hampton was sentenced to life imprisonment under two scenarios, one being a career offender with two prior drug convictions. The order denying the retroactive application of the sentencing guidelines to the crack cocaine offenses in Hampton's case relied, in part, on the fact that Hampton had two prior felony drug convictions mandating a sentence term of life imprisonment, whether considering the statute or the sentencing guidelines.

Over twelve years after being sentenced, on December 13, 2013, Hampton filed the instant, and his second, §2255 Motion to Vacate on the grounds that he has obtained an expungement for one of his prior drug felony convictions. District courts do not have jurisdiction to entertain second or successive motions under § 2255; that authority rests with the circuit court of appeals. §§ 2244(b)(3) and 2255. As such, the court transferred Hampton's second § 2255 motion to the Fifth Circuit, which granted Mr. Hampton's request to proceed on his second petition.

## The Expungement

Hampton references the expungement of a "1979 San Mateo conviction" as the basis for his §2255 Motion to Vacate. Hampton's PSR included multiple prior felony convictions, two of which were drug related offenses, one being an October 24, 1979 conviction for sale of

marijuana from the Superior Court, San Mateo County, California, Dkt. #C8851.  Hampton filed a petition for an expungement for this conviction in Superior Court on June 26, 2012, approximately twenty-eight years and ten months, after he was discharged from parole in California (August 11, 1983).  PSR, ¶ 48.  The Superior Court granted Hampton's petition for expungement in an order executed on January 4, 2013, and filed on January 22, 2013.  As discussed below, Hampton misled the Superior Court to obtain the expungement.

**One-Year Limitations Period**

Motions to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 are subject to a one-year limitations period:

> (f) A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of –
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on this the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).  In this case, subsection (1) applies; the limitations period starts to run from "the date on which the judgment of conviction becomes final."  The Fifth Circuit held that, as with the *habeas corpus* challenge to a state conviction under 28 U.S.C. § 2254, the limitations period to challenge to a federal conviction under 28 U.S.C. § 2255 "becomes final generally upon the

expiration of direct review or the time for seeking direct review." *United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008). Thus:

> [f]or the purpose of starting the clock on § 2255's one-year limitation period . . . a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction.

*Clay v. United States*, 537 U.S. 522, 525, 123 S. Ct. 1072, 1074, 155 L. Ed. 2d 88 (2003). Finally, when a criminal defendant chooses not to pursue a direct appeal of his conviction, that conviction "becomes final for purposes of § 2255 upon the expiration of the [14]-day period for filing a direct appeal." *United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008). In this case, Willie Hampton's conviction became final on February 28, 2005, the date that the United States Supreme Court denied his petition for writ of certiorari on direct appeal. Thus, the deadline for seeking *habeas corpus* relief under 28 U.S.C. § 2255 expired one year later on February 28, 2006.

Under the "mailbox rule," the instant *pro se* federal petition for a writ of *habeas corpus* is deemed filed on the date the petitioner delivered it to prison officials for mailing to the district court. *Coleman v. Johnson,* 184 F.3d 398, 401, *reh'g and reh'g en banc denied,* 196 F.3d 1259 (5th Cir. 1999), *cert. denied,* 529 U.S. 1057, 120 S. Ct. 1564, 146 L.Ed.2d 467 (2000) (citing *Spotville v. Cain,* 149 F.3d 374, 376-78 (5th Cir. 1998)). In this case, the federal petition was filed sometime between the date it was signed on December 2, 2013, and the date it was received and stamped as "filed" in the district court on December 11, 2013. Giving the petitioner the benefit of the doubt by using the earlier date, the instant petition was filed 2,834 days (over 7 years, 9 months) after the February 28, 2006, filing deadline. The petitioner does not allege any "rare and exceptional" circumstance to warrant equitable tolling. *Ott v. Johnson,* 192 F.3d 510,

513-14 (5th Cir. 1999). The instant petition must thus dismissed with prejudice and without evidentiary hearing as untimely filed under 28 U.S.C. § 2244(d).

## Equitable Tolling

It appears that Mr. Hampton argues that the 2012 expungement gave rise to equitable tolling of the one-year limitations period under 28 U.S.C. § 2255(f). "The doctrine of equitable tolling preserves a [petitioner's] claims when strict application of the statute of limitations would be inequitable." *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir.2000) (per curiam) (internal quotations omitted). The one-year limitations period of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") in 28 U.S.C. § 2255(f) is not jurisdictional; thus, it is subject to equitable tolling. *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir.2002). For this reason, a district court may toll the AEDPA limitations period. *Id.* at 229–30.

The decision whether to apply equitable tolling turns on the facts and circumstances of each case. *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir.2000); *see also Alexander v. Cockrell*, 294 F.3d 626, 628 (5th Cir.2002) (per curiam). However, a court may apply equitable tolling only "in rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir.1998); *see also Minter v. Beck,* 230 F.3d 663, 666–67 (4th Cir.2000) ("[E]quitable tolling of the AEDPA's one year limitation period is reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result.") (quotation omitted).

The petitioner bears the burden of establishing that equitable tolling is warranted. *See Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir.), modified on reh'g, 223 F.3d 797 (2000) (per curiam). In order to satisfy his burden, the petitioner must show "(1) that he has been pursuing

his rights diligently, and (2) that some extraordinary circumstance stood in his way" of timely filing his § 2255 motion. *Lawrence v. Florida*, 549 U.S. 327, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007). A petitioner's delay of even four months shows that he has not diligently pursued his rights. *Melancon v. Kaylo*, 259 F.3d 401, 408 (5th Cir. 2001). As discussed below, Mr. Hampton is not entitled to equitable tolling because: (1) his claim fails on the merits, (2) he enters equity with unclean hands, and (2) by any rational measure, he did not pursue expunction of his 1979 conviction with diligence.

**Effect of the 2012 Expunction**

Mr. Hampton argues that the 2012 expunction of his 1979 conviction for sale of marijuana in San Mateo County, California nullifies its use to determine his criminal history category under United States Sentencing Guidelines § 4A1.2(j). He is mistaken, as there are three reasons why the court may use the conviction to enhance Hampton's sentence under the present circumstances. First, as the expunction occurred long *after* Hampton's conviction and sentencing in this case, the court properly used the conviction to enhance his sentence. Second, Hampton obviously perpetrated a fraud upon the San Mateo County, California Superior Court to obtain the expunction, and he is barred from equitable relief under the "unclean hands" doctrine. Third, Hampton did not act with due diligence in pursuing the expunction. The court will discuss the three issues in turn.

**An Expunction Obtained *After* Conviction and Sentencing
Does Not Nullify an Enhanced Sentence**

If Mr. Hampton's conviction had been expunged *before* sentencing on July 11, 2001, it would not have been counted under the criminal statute or the sentencing guidelines. However, expunctions obtained *after* sentencing have no effect on the sentence imposed, even if the prior convictions were used to enhance that sentence. *United States v. Cerverizzo*, 74 F.3d 629, 631 (5th Cir. (Miss.),

1996). In *Cerverizzo*, the Fifth Circuit Court of Appeals held that the defendant failed to follow the procedure required by Arizona state law for receiving an expungement by filing the requisite application prior to sentencing, the conviction had not been expunged, and could be used in calculating the his criminal history category for purposes of the present conviction. *Id*. The California expunction statute at issue in the present case also requires a defendant to take affirmative steps to obtain the expunction:

> In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation, or has been discharged prior to the termination of the period of probation, or in any other case in which a court, in its discretion and the interests of justice, determines that a defendant should be granted the relief available under this section, the defendant shall, at any time after the termination of the period of probation, if he or she is not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense, be permitted by the court to withdraw his or her plea of guilty or plea of nolo contendere and enter a plea of not guilty; or, if he or she has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty; and, in either case, the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, he or she shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted [with several exceptions].

Cal. Penal Code § 1203.4(a)(1). Mr. Hampton did not do so until June 26, 2012, long after his 2002 conviction and sentencing in this court.[1]

In *McCullum v. United States* this court addressed the effect on § 2255 relief of an expunction obtained after sentencing:

> Because the Municipal Court order expunging McCullum's misdemeanor convictions was entered upon McCullum's petition after McCullum was sentenced in this case, the convictions were properly counted in determining McCullum's criminal history.

---

[1] Though Mr. Hampton alleges that he attempted to seek expunction in 2001, during the period between his conviction and sentencing, the Superior Court of San Mateo County, California, has no record of such a request. However, even if Mr. Hampton did attempt to file such a request, he did not do so with due diligence, as he was released from parole for the California conviction in 1983 (thus making him eligible for expunction under § 1203.4), but did not seek expunction until 2001, some 18 years later.

> *United States v. Cerverizzo,* 74 F.3d 629, 631 (5th Cir.1996) (holding that a defendant's prior state conviction could be considered in calculating his criminal history despite the fact that it was expungeable under state law where defendant did not take affirmative action to effect expunction prior to sentencing). Here, McCullum's misdemeanor convictions were not expunged by operation of law, but rather, McCullum was required to take affirmative steps to expunge the convictions. The convictions were not expunged at the time of McCullum's federal sentencing. Therefore, at the time of his sentencing, McCullum's convictions were properly counted as "convictions" for Guidelines purposes.

*McCullum v. United States*, No. 4:07CR190-SA, 2014 WL 3749150, at *2 (N.D. Miss. July 29, 2014). As the present case is legally indistinguishable from *Cerverizzo* and *McCullum, supra*, the instant Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 will be denied.

### Hampton Obtained the Expunction By Providing False Information, Perpetrating a Fraud Upon the San Mateo County Superior Court

As discussed above, Mr. Hampton's § 2255 motion fails on the merits. In addition, it is clear that he provided false information on his application for expunction of his 1979 San Mateo County, California conviction for sale of marijuana. Under Cal. Penal Code § 1203.4(a)(1), a defendant may have his conviction expunged only "if he or she is not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense." In his application to have his 1979 conviction expunged, Mr. Hampton checked box stating:

> Petitioner declares … that the defendant is not serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense. (Penal Code § 1203.4)

Doc. 420-1 at 3, Petition for Relief Under Penal Code § 1203.4, § 1203.4a (signed May 21, 2012). The Superior Court of San Mateo County, California, then found that:

> [t]he defendant … is not serving a sentence for any offense nor under the charge of commission of any crime, and since the pronouncement of judgment has lived an honest and upright life, and conformed to and obeyed the laws of the land.

Doc. 420-1 at 2, Petition and Order for Expungement (Pen. Code, §§ 17, 1203.4, 1203.4a) (filed June 26, 2012).

Obviously, Willie Hampton was incarcerated in the federal penitentiary in 2012 when he submitted his petition to have his 1979 conviction expunged. As such, he was "serving a sentence for [an] offense" and was not eligible to have his record expunged under § 1203.4 of the California Penal Code. Indeed, in his Certificate of Service for the petition for expunction, he stated that he "deposited [the petition] in the United States Postal Mail at the F.C.I. Memphis TN On the 22nd day of May 2012." Doc. 420-2 at 6. In addition, even if he had filed the California petition for expunction in 2001, as he claimed, he was, at the time, "charged with the commission of [an] offense" – the charges in the instant criminal case – and would still have been ineligible to have his conviction expunged under California law.

Indeed, Mr. Hampton committed a host of crimes from the time he was released from probation for the 1979 conviction for sale of marijuana until he was arrested for the crimes in the present case. His criminal history set forth in the Presentence Investigation Report in this case makes this clear.

| **Date of Conviction** | **Offense** |
|---|---|
| January 20, 1971 | Misdemeanor Aggravated Assault |
| February 13, 1972 | Unlawful use of a credit card |
| April 27, 1978 | Credit Card Fraud |
| October 24, 1979 | Possession of Marijuana for Sale |
| March 6, 1980 | Two counts of insurance fraud |
| January 24, 1985 | Felony Grand Theft |

September 30, 1986		Possession of Cocaine with Intent to Distribute

June 7, 1995		Driving Without a License

August 26, 1997		Expired Inspection

July 18, 2001		Distributing crack cocaine
(Current conviction)		Two Counts:  Possession of crack cocaine with intent to distribute

Mr. Hampton faced numerous other charges over the years, which were dismissed, retired to the file, or remained open at the time the Presentence Investigation Report was drafted.  As such, Willie Hampton in no way "lived an honest and upright life, and conformed to and obeyed the laws of the land" after his release from parole on the 1979 possession of marijuana with intent to distribute – as he falsely conveyed to the Superior Court of San Mateo County, California.

The United States Supreme Court has eloquently addressed the venerable doctrine of unclean hands:

> The guiding doctrine in this case is the equitable maxim that 'he who comes into equity must come with clean hands.'  This maxim is far more than a mere banality.  It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.  That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith.  This presupposes a refusal on its part to be 'the abetter of iniquity.'  *Bein v. Heath*, 6 How. 228, 247, 12 L.Ed. 416.  Thus while 'equity does not demand that its suitors shall have led blameless lives,' *Loughran v. Loughran*, 292 U.S. 216, 229, 54 S.Ct. 684, 689, 78 L.Ed. 1219, as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue.  *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245, 54 S.Ct. 146, 147, 78 L.Ed. 293; *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387, 64 S.Ct. 622, 624, 88 L.Ed. 814; 2 Pomeroy, Equity Jurisprudence (5th Ed.) ss 397-399.
>
> This maxim necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant.  It is 'not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion.'  *Keystone Driller Co. v. General Excavator Co., supra*, 290 U.S. 245, 246, 54 S.Ct. 147, 148, 78 L.Ed. 293.  Accordingly one's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character.

> Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim by the chancellor.
>
> Moreover, where a suit in equity concerns the public interest as well as the private interests of the litigants this doctrine assumes even wider and more significant proportions. For if an equity court properly uses the maxim to withhold its assistance in such a case it not only prevents a wrongdoer from enjoying the fruits of his transgression but averts an injury to the public. The determination of when the maxim should be applied to bar this type of suit thus becomes of vital significance. *See Morton Salt Co. v. G. S. Suppiger Co.*, 314 U.S. 488, 492-494, 788, 62 S.Ct. 402, 405, 406, 86 L.Ed. 363.

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814–15, 65 S. Ct. 993, 997–98, 89 L. Ed. 1381 (1945).

Without question, Mr. Hampton comes into this court seeking equity with unclean hands. He demonstrably lied to the San Mateo County Superior Court to obtain an expunction of the 1979 conviction, then presented the expunction to this court to seek a reduction of his sentence. This is also a case in which the public interest comes into play, where "the doctrine assumes even wider and more significant proportions." *Id.* As summarized above, Mr. Hampton has a string of ten convictions from 1971 to 2001. In addition, he was arrested seven other times for offenses, but was not convicted on those charges. The offenses run the gamut, from driving without a license, to credit card fraud, to insurance fraud, to assault, to being a key cog in a large cocaine distribution ring (the present case). His offenses range from large to small, violent to non-violent. According the PSR in this case, Willie Hampton also put a "hit" on an investigating officer in this case and threatened his codefendant – causing him to cease cooperating with the government. Based upon his 30-year span of serious criminal activity, as well has his threats and intimidation of witnesses, the court finds that Mr. Hampton is a dangerous man. For this reason, the public has a strong interest in his continued incarceration. Further, given Mr. Hampton's

criminal history of dishonesty (fraud) the court cannot ignore his present dishonest act – providing false information to obtain an expunction. For all of these reasons, the court finds that Mr. Hampton's request for equitable tolling in this case is barred by the doctrine of unclean hands.

## Hampton Did Not Exercise Due Diligence in Pursuing the Expunction

As the court touched on above, the record in this case contains not a shred of documentary evidence that Mr. Hampton attempted to file a petition in California in 2001 to have his 1979 conviction expunged. Mr. Hampton has provided no such evidence, and the San Mateo, California Superior Court confirmed the absence of such documents in Hampton's criminal file. In addition, Mr. Hampton has, at various times, admitted that he was convicted of the crime in 1979 – and denied the conviction. Willie Hampton did not object to the prior convictions' application to compute his sentence before trial. Then, during trial, Hampton admitted the 1979 conviction during cross examination. Later, at sentencing, Hampton not only failed to disclose the alleged February petition for expungement, he denied the conviction altogether. Indeed, during sentencing, Mr. Hampton's attorney was understandably unprepared to argue that the conviction did not exist. Further, during sentencing in July 2001, neither Hampton nor his attorney represented to court that Hampton had filed a petition for expunction only months prior. Thus, Mr. Hampton denied the conviction completely in July 2001, but now alleges that he filed a petition for expungement in February for the conviction he alleged did not exist. *See* Government's Response in Opposition to Petitioner's Motion Under 28 U.S.C. § 2255, p. 7. Thus, Mr. Hampton's allegations regarding the 1979 conviction, as well as his attempts to have it expunged, have shifted like the sands of the Sahara, depending upon Hampton's perception of which story would give him the greatest advantage at the moment.

Nonetheless, even if Mr. Hampton did attempt to file such a request in 2001, he did not do so with due diligence, as he was released from parole for the California conviction in 1983 (thus making him eligible for expunction under § 1203.4) – but did not seek it until 2001, some 18 years later. Hampton's earliest *documented* petition for relief under California's expunction statute was in 2012 – approximately 29 years after relief under that statute became available to him in 1983. Clearly, in either scenario, Mr. Hampton did not diligently seek to have his conviction expunged. For this reason, as well, he cannot avail himself of equitable tolling to overcome the one-year limitations period of 28 U.S.C. § 2255(f).

## Conclusion

In sum, equitable tolling in not available to the movant in this case, and the instant motion to vacate, set aside, or correct sentence will be dismissed with prejudice as untimely filed. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 15th day of November, 2017.

**/s/ Sharion Aycock**
**U.S. DISTRICT JUDGE**